IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MIKA'YA ALI SHAKUR, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:21cv00397 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| SGT. THOMPSON, | ) | By:   Hon. Thomas T. Cullen |
| | ) |          United States District Judge |
| Defendant. | ) | |

_____

Mika'ya Ali Shakur, a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983 against Defendant Sgt. Thompson. Shakur alleges that Sgt. Thompson violated his rights by denying him the COVID-19 vaccine on February 1, 2021, while Shakur was housed at Augusta Correctional Center ("Augusta"). Sgt. Thompson filed a motion to dismiss. Having reviewed the pleadings and their attachments, the court will grant Sgt. Thompson's motion.

I.

Shakur alleges that he was "scheduled" to receive the COVID-19 vaccine on February 1, 2021, but when he arrived at the gymnasium to be vaccinated, Sgt. Thompson approached him and advised him that he could not be vaccinated because his name was not highlighted on the "master pass list." (Compl. at 3–4 [ECF No. 1].) Shakur does not allege that Sgt. Thompson created the master pass list, decided which names were highlighted, knew why

some names were highlighted and others were not, or that Thompson is a medical professional.[1]

Attached to his complaint, Shakur submits relevant grievance records. (*See* ECF No. 1-1.) Shakur filed an informal complaint concerning the incident on February 1, stating that Sgt. Thompson was "deliberate[ly] indifferen[t]" toward Shakur's "serious medical need" and "abuse[d his] discretion" when he told Shakur that he "could not allow [Shakur] in [to be vaccinated] due to the fact [that his] name wasn't highlighted [on the list]." (*Id.* at 5.) In the response dated February 5, a non-defendant Lieutenant wrote that staff had been advised that if an inmate's name was not highlighted on the list, they were not supposed to "come over" to get their vaccine "at that time." (*Id.*) Shakur argues that the informal complaint response was a "negligent misrepresentation of facts and/or policy."[2] (Compl. at 3.) Shakur also asserts that Sgt. Thompson allowed two other inmates who were "in line directly in front of" him to be vaccinated even though their names were not on the list at all.[3] (*Id.*)

Shakur states that Sgt. Thompson "was cognizant or should have known that his decision to deprive [Shakur] an opportunity to be inoculated with the vaccine could potentially subject [Shakur] to irreparable injury and/or death," in light of the "fact" that over 500 inmates and staff at Augusta, including Sgt. Thompson, tested positive for COVID-19 and five people

---

[1] Indeed, in response to a later-filed grievance, the Warden indicates that the list was "provided by the medical department." (ECF No. 1-1 at 2.)

[2] In his regular grievance signed February 9, 2021, and attached to his complaint, Shakur described the informal complaint response as "nothing more than rote recitation of abstract principles that failed to meet the nature of [his] complaint." (ECF No. 1-1 at 6.)

[3] Shakur submits an unverified "affidavit" from one of the inmates. (ECF No. 1-2.) The document states that the inmate was in line to be vaccinated even though he had not signed up, the inmate approached Sgt. Thompson and advised him that he had not signed up so his name was not on the list, and Sgt. Thompson allowed the inmate to be vaccinated. (*Id.*)

died from it. (*Id.* at 3–4.) He also claims that Sgt Thompson was "aware of the risks associated with an outbreak at Augusta," and that the risks were "undeniably high" because social distancing was "difficult and, in many situations, practically impossible." (*Id.* at 4.)

Shakur states that he ultimately received his first dose of the COVID-19 vaccine on March 2, 2021, and his second dose on March 25, 2021. Shakur does not allege that Sgt. Thompson was responsible for him not receiving the vaccine at any other time or on any other day. Shakur also does not allege that he contracted COVID-19 during the ensuing seven weeks before he received the vaccine. In a regular grievance signed eight days after he was denied the vaccine, Shakur asserts that not getting the vaccine for those eight days had "affected [him] in ways unimaginable" and "caused him to have acute symptoms of PTSD" because he was "scared that if [he did not] receive the vaccine, [he would] be the next fatality. . . ."[4] (ECF No. 1-1 at 6.) In the Warden's response to the regular grievance, he states that "inmates were called by the list provided by the medical department," that Shakur was "not scheduled" to receive his vaccine on February 1, and that he would be "called by medical" when he was scheduled. (*Id.* at 2.) Shakur does not allege that Sgt. Thompson knew or even had reason to know that Shakur might suffer any symptoms of PTSD from being denied access to the vaccine on February 1.

---

[4] Post-traumatic stress disorder ("PTSD") "is a psychiatric disorder that may occur in people who have experienced or witnessed a traumatic event, series of events or set of circumstances." American Psychiatric Association, *What is Posttraumatic Stress Disorder (PTSD)?*, https://www.psychiatry.org/patients-families/ptsd/what-is-ptsd (last visited Jan. 24, 2023.) "For a person to be diagnosed with PTSD, . . . symptoms must last for more than a month and must cause significant distress or problems in the individual's daily functioning." (*Id.*) The court notes that Shakur does not allege that a doctor diagnosed him with PTSD related to waiting for the vaccine or even with PTSD at all. In addition, Shakur does not define or describe any of the "acute symptoms of PTSD" that he allegedly suffered.

- 3 -

## II.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Id.*; *see Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

To allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "liberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *see also Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Scarborough v. Frederick Cnty. Sch. Bd.*, 517 F. Supp. 3d 569, 575 (W.D. Va. Feb. 8, 2021) (quoting *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999)).

## III.

Shakur alleges that Sgt. Thompson violated his constitutional rights when he denied him access to the COVID-19 vaccine on February 1, 2021. Shakur's allegations, however, do not establish that Sgt. Thompson was deliberately indifferent to a serious medical need and, therefore, the court will grant Thompson's motion.

"It is beyond debate that a 'prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment.'" *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019) (quoting *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014)). To establish a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must put forth facts sufficient to demonstrate that an official was deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429

U.S. 97, 105 (1976); *Conner v. Donnelly*, 42 F.3d 220, 222 (4th Cir. 1994); *Staples v. Va. Dep't of Corr.*, 904 F. Supp. 487, 492 (E.D. Va. 1995). A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999); *Sheldon v. C/O Pezley*, 49 F.3d 1312, 1316 (8th Cir. 1995). A prison official is "deliberately indifferent" only if he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (U.S. 1994). The defendant's disregard for the plaintiff's medical need must have been "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Jackson v. Sampson*, 536 F. App'x 356, 357 (4th Cir. 2013). Overall, to prove deliberate indifference, the plaintiff bears a heavy burden. *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984).

"[P]risoners do not have a constitutional right to the treatment of his or her choice." *King v. United States*, 536 F. App'x 358, 362-63 (4th Cir. 2013) (unpublished, internal citations omitted). A claim concerning a mere disagreement between an inmate and medical personnel regarding diagnosis or course of treatment does not implicate the Eighth Amendment. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Harris v. Murray*, 761 F. Supp. 409, 414 (E.D. Va. 1990). Questions of medical judgment are not subject to judicial review. *Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975).

A non-medical provider generally cannot be held liable for a failure to provide an inmate medical treatment where that inmate is under the care of a physician. *Miltier v. Beorn*,

896 F.2d 848, 854 (4th Cir. 1990) (holding that non-medical personnel are entitled to rely on the professional judgment of medical practitioners to determine appropriate treatment for a patient); *see also Iko v. Shreve*, 535 F.3d 225, 242 (4th Cir. 2008) (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (holding "[i]f a prisoner is under the care of medical experts . . ., a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands.'"). To establish a claim for denial of medical care against non-medical personnel, an inmate must show that the non-medical personnel failed to promptly provide needed medical treatment, deliberately interfered with a jail's medical personnel's treatment, or tacitly authorized or were indifferent to the jail personnel's misconduct. *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990).

Shakur does not allege that Sgt. Thompson is a medical provider. The complaint and attachments make it clear that he is not and that, on the day Shakur was initially denied a COVID-19 vaccine, Sgt. Thompson was simply executing a medical decision that was made by someone in the medical department. The complaint and attachments indicate that Sgt. Thompson was given a list of inmate names; some of the names on that list were highlighted, and Sgt Thompson was directed that if an inmate's name was not highlighted, he was not scheduled—and should not be allowed—to receive the COVID-19 vaccine at that time. There is no allegation that Sgt. Thompson was responsible for the decisions of which inmates' names were highlighted or when Shakur would receive the vaccine.[5] There

---

[5] Although inexplicable on the current record, Sgt. Thompson's decision to allow two other inmates to receive the vaccine even though their names were not on the list at all, does not state an equal protection claim. Thus, the court declines to construe it as such. The Equal Protection Clause of the Fourteenth Amendment generally requires the government to treat similarly situated people alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439-41 (1985). It "does not take from the States all power of classification, but keeps governmental decision makers from treating differently persons who are in all relevant respects alike." *Veney v. Wyche*, 293

is also no allegation that Sgt. Thompson knew when Shakur would subsequently receive the vaccine.

Shakur's allegations do not establish that Sgt. Thompson knew of or disregarded any excessive risk of harm to Shakur by denying him the vaccine on that date at that time pursuant to medical department protocol. There is no allegation that Sgt. Thompson continued to deny Shakur the vaccine on any occasion before he received the vaccine the following month. To the extent that Shakur disagreed with medical staff's determination that he would not receive the vaccine on February 1, 2021, his allegations do not state a claim. Further, Sgt. Thompson following the orders from the medical department does not establish that Sgt. Thompson was deliberately indifferent to Shakur's medical needs in violation of the Eighth Amendment.

## IV.

Finding that Shakur's allegations fail to state a viable § 1983 claim against Sgt. Thompson, the court will grant his motion to dismiss.

---

F.3d 726, 730 (4th Cir. 2002) (internal quotation marks and citations omitted). To prove an equal protection claim, an inmate "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination" on the basis of the plaintiff's membership in a protected class, such as race, gender, or religion. *Id.* (internal quotation marks omitted). In this case, Shakur has not alleged that he was similarly situated to the inmates who did not sign up to receive the vaccine and he has not shown that any disparate treatment was based on his membership in a protected class. Accordingly, his allegations do not state an equal protection claim.

The Clerk shall send copies of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 1st day of February, 2023.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE